Please call the next case. Please call 48A, Dale Gross v. Kennedy. Counsel? Counsel? Morning. May it please the Court, Counsel. My name is Sandy Loeb and I represent the plaintiff, Dale Gross. Mr. Gross' claim is brought before this Court after the Circuit Court upheld the Workers' Compensation Commission's findings on both the issues of accident and causation without making any independent findings of its own. The Court should have found that the Commission's findings on both issues were against the manifest weight of the evidence. The facts surrounding the plaintiff's injury are straightforward and mostly undisputed. The plaintiff is a Kankakee County Sheriff's deputy. The evidence is undisputed that he injured his right knee in the process of performing one of his duties at the courthouse, keeping the courthouse secure. His accident was not witnessed and his testimony as to how it occurred is unrebutted in the record. His testimony is that he was the only officer present on the first floor of this courthouse. He was manning the front of the courthouse, the security equipment, or x-ray machine, when he came to realize that the back door was open. After making sure no one was approaching the courthouse from the front, Mr. Gross testified that he crossed to the back of the courthouse, descended four steps to the rear door, secured it, and hurried back up those stairs in order to return to his post before someone could enter the courthouse through the front door. Specifically, he testified as he ascended those steps, he skipped the first step, stepped on the second step with his left foot, then he skipped the third step and stepped up to the fourth step or the landing with his right foot, pivoted on that foot, heard a pop, and proceeded to walk back to his post at the front of the courthouse. How is the claimant in this case exposed to a risk greater than that to the members of the general public, going up and down stairs? I guess maybe we're looking for something besides the going up and down the stairs to explain the fall. I'm not sure the court has to do that. I think he's at an increased risk by virtue of the number of times he has to traverse those stairs. And again, that evidence is unrebutted in the record before you. He testified he had to make those trips between 40 to 50 times a day. There's no evidence to the contrary. Respondent's brief suggests that that can't possibly be the case if he had to man the first floor of the courthouse alone during the time of this accident. But nothing tells this Court that his testimony equates to him having to traverse the stairs a certain number of times per hour. It doesn't get divided equally. You can imagine you've been in these courthouses. One of his jobs is to bring inmates in and out of court for testimony. Maybe he has to bring 20 in one hour. Who knows? Is there something about the layout here that may have contributed to this? Absolutely. Absolutely. And what would it be? The fact that he had to go down and up four steps before exiting that courthouse. And also the fact that he had to turn in order to avoid a wall in front of him. When those elements are combined with the fact that he was in a hurry, that's going to increase his risk of pivoting on that knee. It wasn't just an up and down the stairs. He had to make a turn. Absolutely. Okay. One of the points I bring out in my brief is that the Commission decided this case based on a made-up set of facts, that he was merely walking when he injured himself. Half the case law cited in the Commission's brief is about how the act of standing and walking doesn't arise out of the employment. The manifest way to the evidence in this case is that injury occurred as he was ascending the steps. Maybe it's a matter of semantics that it was the fourth step, which also could be called the landing, but as he reached the top of the steps is when he turned and pivoted the knee, heard the pop, and reported the injury the following day consistently. Four reports were filed indicating that the stairway was the locus of his injury. The fact that he didn't specifically mention that he was in a hurry in those accident reports should not cut against the petitioner's testimony. That's a logical extension of what he testified to. As you know, those reports are not meant for detailed accounts. They basically summarize how the accident occurred. In addition to erring on the issue of accident, the Commission also erred on the issue of causation. It's undisputed that the record before the court indicates that petitioner suffered from more than one diagnosis affecting his right knee. One of them was pre-patellar bursitis, and admittedly that was diagnosed prior to the work accident. But the second diagnosis, and the one that was treated surgically, was the meniscus tear. The petitioner argues that the manifest weight of the evidence does suggest that the meniscus tear was causally related to the accident. It was not diagnosed until after the accident. There was no MRI taken until after the accident. All histories except for Dr. Inad's single medical record identify the twisting event at work as being the source of the symptoms that petitioner was claiming. The medical histories identified it as the source of his complaint? Yes.  Did he have a prior subjective history with similar complaints? Similar complaints, however, not exactly the same complaints. He was complaining of swelling, water on the knee, and difficulty walking before the incident, according to Dr. Inad's record. Dr. Inad's record that follows the accident doesn't give a subjective history. It's taken by the medical provider. There's nothing that indicates this is what the petitioner told him at the appointment. The history says that he's there for a well check. The history says that he's had complaints in his knee for three months. But it doesn't indicate that that was a subjective history given by the petitioner. For all we know, the nurse flipped back to the record and said, okay, he was here a couple months ago, and he's having right knee complaints. Well, he already had knee problems, but we can't have any cover on that. In theory, it's an aggravation of an existing condition. Exactly. Did you argue that at the moment? Yes, I did. I argued that even if the condition was degenerative in nature, that the manifest weight of the evidence shows that the workplace was a causative factor. The work accident was a causative factor in the condition that he presented. It was the sole or the only cause, but it was a causative factor. Exactly. And that's what I need to prove in this case. Unless the panel has any more questions, it's for those reasons and the reasons cited in the brief that I'd like or request that the court overturn the circuit court and the commission. Thank you. Thank you, counsel. Good morning. May it please the court. Good morning, counsel. My name is Kesa Stahnikian. I represent the defendant, Kankakee County Sheriff's Department. There are two issues before you today. The first is whether or not petitioner's alleged injury arose out of his employment. And then the alternative, should his injury have arose out of his employment, whether there is any causal connection between the injury and his knee condition. The larger issue at trial was whether or not Mr. Gross's injury arose out of his employment. Counsel has already cited the facts. He was in the Kankakee Courthouse, which is a small courthouse building. He was at the front of the courthouse manning the security machine. He saw that the back door was open. He walked to the back. We know all those facts. Right. Down the four stairs, up the four stairs. We understand all of that. Right. Now, is he exposed to risk greater than that in the general public? No, he was not. 40 to 50 times going up and down the stairs? Not those set of stairs. The record is clear that it was not those four stairs that he went up and down 40 to 50 times a day. He testified that he went down stairs in the general courthouse 40 to 50 times a day. Counsel cites Nacoste v. Illinois Workers' Compensation Commission, where the court did find that going up and down a stair multiple times a day could put an employee at a greater risk of injury than the general public. In that case, that employee went up and down one step 400 times a day. Not only did she have her own testimony to prove that, she offered a job description and the testimony of other employees to confirm that fact. None of that was present here. Let me see if I can follow your point. If somebody goes up a set of stairs, one set of stairs, 900 times a day, goes up another set of stairs 50 times a day, a different set, and they fall on the 50-stair routine, they can't be public because it was on a different staircase. No, I think that the question is whether or not going up and down these stairs puts the employee at a greater risk than the general public. Right. And qualitatively, the amount of times is a relevant factor, isn't it? I think it's a crucial factor. Well, then what does a different staircase have to do with it? Because the general public may go down, up and down. When I'm in that courthouse, I may go up and down the stairs 30 times if I have to go to one room, go out the door, up the stairs. And he's at the same risk as the general public. It's a general courthouse. It's a public courthouse. The general public goes in Kankakee County Courthouse up and down stairs 30 to 50 times. The general public, no. You're not really a member of the general public, I would argue, going as an attorney conducting business in the courthouse. I understand, Your Honor. Somebody comes into traffic court and they're up and down the stairs 40 times. I think the other issue in finding the commission's decision is not against the manifest weight of the evidence, is they did not find the petitioner credible. Look at the 40 to 50 times a day. He testified that his main duty was securing the front of the courthouse. If he's going downstairs 40 to 50 times a day, that's 5 to 6 times an hour in an 8-hour shift. When is he at the front of the courthouse if he's going up and down the stairs? Is he a supervisor or is he somebody who's just supposed to be watching the front door? He was not a supervisor. He testified that at that time he was performing security at the Kankakee County Courthouse. And he also, I think counsel indicated that he was the only person that was performing security. That's not true. There were other bailiffs present in the courthouse. It's in his testimony. They were just not at the front at that time of day. Well, did the commission rule against him because they announced they didn't believe him? Right. Yes. And then the other issue as to why they believed that he was not at a greater risk was that he testified for the first time or when he testified at trial was the first time he indicated that he was hurrying down the stairs. The skipping of the stairs, the hurrying up and down the stairs, that was never indicated to before. He filled out four accident reports, some in his own writing, and he never said he was hurrying, never said he was running, never said he was skipping steps. It was always walking up the stairs. Well, there was also another version, and I'd like to know whatever additional detail there is in this regard, as to where it happened because in the arbitrator's decision it says at page four that a close look at Petitioner's claim reveals that he is not claiming he was injured on the stairs but rather after he had ascended the stairs and was walking back to his workstation. Right. So the saying that this injury didn't occur on the stairs but on a flat area someplace, when did he say that and exactly what did he say? He testified that he went up the fourth stair and on the fourth stair or the landing, as he was walking back to the front of the courthouse, he had to turn to walk back. And we all know you don't walk in a straight line. Turning is part of the process of walking. He turned and that's when he felt a pop in his knee. So it wasn't because of an odd layout at the top of the landing. He had to turn to get back, to walk back to the front of the courthouse. Okay. And this isn't a landing between flights of stairs. This is after he reaches the level, the floor that he is wanting to be on and is walking back to his workstation? Yes. Okay. Where in the decision does it suggest they didn't believe him? Can you call that to our attention, please? Yes. It's on page 5, the second to last paragraph. Page 5 of the? Of the arbitrator's decision.  I'm looking at it. Which paragraph? Page 5. It's the second to last paragraph at the bottom. Okay, read it. The arbitrator finds insufficient evidence to support petitioner's claim that it was necessary for him to hurry and thereby skip steps to perform his duties on that day, thereby exposing him to a risk to which the general public is exposed or the employee is exposed to a greater degree. Insufficient evidence doesn't necessarily establish he's not credible, does it? And is that how you interpret it? I don't know that I would jump to that conclusion. Not presenting evidence is not the same as being not credible. Anyway. That could be quantum of evidence, not necessarily the believability of, I think, what we're suggesting. Could you move on to the causation? In the alternative, petitioner treated five days prior to the accident. He went in with knee complaints of swelling and water in his knee. He testified that his knee was still swollen and he still had trouble walking at the time of the injury. When he went in to treat after the injury, his complaints were the same. He then has no treatment for a month and a half. When he returns to that same doctor, Dr. Anand, he returns with identical complaints of swelling and fluid in his knee. This time he reports that his knee has felt like this for the past three months, but it's only been eight weeks since the work accident. In order for there to be an aggravation, there must be some type of subjective complaint, objective finding that has changed after the work injury. Here, nothing has changed after the injury. His complaints are the same. The findings are the same. In sum, we request that you affirm the commission decision in its entirety. So what you're saying is, I think the thing is injury. Injury assumes effect on an evidence related to the incident, but you're saying that the symptoms are the same before as after. Right. And by his own testimony, there's been no change. Exactly. After the month and a half gap of treatment, and when he does go back to treat, he states that these complaints have been there for three months, which would be significantly prior to the work injury. It would be roughly a month and a half before the incident. Exactly. There's no medical to suggest the finding by an MRI of the meniscal tear. There's no evidence that it suggested that the event described by the officer would have resulted in a tear. No. No evidence was presented by the petitioner dating the findings on the MRI. There's no medical testimony that would say that the findings of the MRI were post the injury, other than the fact that the MRI was done after the injury. Post incident. Exactly. Thank you, counsel. Ms. Bly? I just have two quick points. I don't believe that there's anything in the record before this court that challenges the petitioner's credibility. With regard to the issue of causation, I think that's the harder issue that this court has to determine. And what this court needs to realize is we don't have expert testimony. All we have is the evidence that's in front of us. It's my argument that the manifest weight of the evidence that's before this court at this time points to the conclusion or leads to the conclusion that the need for surgery did not arise until after the accident. Whether that meniscus tear was in his knee before the accident or not, the evidence, overwhelming evidence points to the fact that his condition was aggravated or accelerated as a result of the work accident. His testimony was that his symptoms were different after the accident. Counsel, on the other side, keeps pointing to the record of Dr. Anand post-accident of August of 2009. We don't have testimony indicating what portion of that medical record came from the petitioner. We don't know what the subjective history was in that record. So we can't say he walked in there and said he's had the same complaint for three months. We can't say that he had the same findings because the findings are different in the medical record. For these reasons, I believe that the commission should be overturned and the circuit court error for not overturning it. Thank you. Thank you, counsel. We'll stand in brief recess.